IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| CKC PROPERTIES, LLC, and<br>SHEM CREEK BOUTIQUE, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>THE TOWN OF MOUNT PLEASANT,<br>SOUTH CAROLINA, and JOHN/JANE<br>DOES 1–20,<br><br>Defendants. | No. 2:23-cv-04489-DCN<br><br>ORDER |

The following matter is before the court on defendant Town of Mount Pleasant's ("Mount Pleasant") motion to dismiss, ECF No. 4. For the reasons set forth below, the court stays this case pending resolution of two related cases, which are currently awaiting decision in a consolidated appeal before the South Carolina Court of Appeals. CKC Props., LLC v. Town of Mount Pleasant ("Consolidated Appeal"), No. 2023-001615 (S.C. Ct. App. consolidated Nov. 27, 2023).

**I. BACKGROUND**

This case presents a dispute over the proposed construction of a hotel in Mount Pleasant, South Carolina. See generally ECF No. 1-1, Compl. The procedural history of this case is complicated, as it is intertwined with two other cases simultaneously making their way through the South Carolina court system. The court will begin by outlining the procedural background relevant to the court's reasoning.

Plaintiffs in this case are CKC Properties, LLC ("CKC") and its affiliate Shem Creek Boutique, LLC ("SCB") (collectively, the "Developers"). Id. ¶ 8. SCB owns property in Mount Pleasant, where CKC plans to build the Shem Creek Boutique Hotel

1

(the "Project"). Id. ¶¶ 7–10. The Developers claim that in February and March 2021, they discussed the Project with Mount Pleasant's then-zoning administrator and made their development plans in accordance with the zoning administrator's feedback. Id. ¶¶ 14–16. In May 2021, the Developers submitted their plans for pre-application review with the Conceptual Design Review Team ("DRT"), a body which includes the zoning administrator. Id. ¶¶ 19–20. In June 2021, the DRT confirmed the zoning administrator's determination that the planned Project was compliant with zoning requirements. Id. ¶ 20.

After that, the Developers filed an application for "Preliminary Approval of Site, Landscape, and Architecture" with Mount Pleasant's Design Review Board ("DRB"). Id. ¶¶ 21–22. The Developers claim that their DRB hearing was canceled "due to alleged minor technical deficiencies." Id. ¶ 25. The Developers suspect that this "highly irregular" delay was, in fact, the result of interference from Mount Pleasant staff and local elected officials. Id. ¶¶ 27–36. According to the Developers, Mount Pleasant then made "sweeping zoning changes aimed directly at thwarting the Project" while their application with the DRB was still pending. Id. ¶¶ 44–48. The Developers claim that the DRB issued an order deferring consideration of their pending application following some additional procedural irregularities. Id. ¶¶ 56–67. On September 24, 2021, the Developers appealed the DRB's deferral order to the Charleston County Court of Common Pleas pursuant to S.C. Code Ann. Section 6-29-900. CKC Props., LLC v. Town of Mount Pleasant ("DRB Appeal"), No. 2021-CP-10-04416 (Charleston Cnty. Ct. C.P. Sept. 24, 2021).

At about the same time the Developers were going through the DRB approval process, one of the residents of Mount Pleasant appealed the DRT's confirmation of the Project's zoning compliance to the Mount Pleasant Board of Zoning Appeals ("BOZA"). Id. ¶¶ 49–50.  The BOZA held a hearing on the Project on September 27, 2021.  Id. ¶ 68. The Developers maintain that this proceeding was marred with procedural irregularities similar to those they claim they faced in the DRB hearing.  See id. ¶¶ 68–79.  Ultimately, the BOZA held that the zoning administrator had erred in interpreting various zoning regulations related to the Project.  Id. ¶ 80.  This decision, according to the Developers, "effectively halted the Project." Id. ¶ 81.  In an effort to resume development, the Developers appealed the BOZA's decision to the Charleston County Court of Common Pleas on November 16, 2021, pursuant to S.C. Code Ann. Section 6-29-820.  CKC Props., LLC v. Town of Mount Pleasant ("BOZA Appeal"), No. 2021-CP-10-05211 (Charleston Cnty. Ct. C.P. Nov. 16, 2021).

Thereafter, on July 14, 2023, the Master-In-Equity of the Court of Common Pleas issued an order reversing the BOZA decision in part and affirming it in part.  Order Reversing BOZA Order in Part and Affirming in Part ("MIE Order"), BOZA Appeal, No. 2021-CP-10-05211.  In the MIE Order, the Master-In-Equity concluded that the BOZA had erred as a matter of law in its interpretation of the zoning ordinances and reinstated the zoning administrator's prior approval of the project.  Id. at 15–16.

One week after the Master-In-Equity issued the MIE Order, the Developers filed the instant case in the Charleston County Court of Common Pleas on July 21, 2023.  CKC Props., LLC v. Town of Mount Pleasant, No. 2023-CP-10-03557 (Charleston

Cnty. Ct. C.P. July 21, 2023).[1]  In this case, the Developers assert six causes of action based on purported irregularities in the DRB and BOZA approval process: (1) civil conspiracy; (2) negligence/gross negligence; (3) inverse condemnation/regulatory taking/temporary taking; (4) violation of substantive due process rights; (5) violation of the South Carolina Freedom of Information Act ("FOIA"), S.C. Code Ann. § 30-4-10, et seq.; and (6) declaratory judgment.  Compl. ¶¶ 90–146.

On July 24, 2023, three days after filing this action, Mount Pleasant moved for the Court of Common Pleas to reconsider its decision in the BOZA Appeal.  Mot. Recons., BOZA Appeal, No. 2021-CP-10-05211.  While the motion to reconsider in the BOZA Appeal was pending in the Court of Common Pleas, Mount Pleasant removed this case to this court on September 6, 2023.  ECF No. 1.

One week after removal, on September 13, 2023, Mount Pleasant filed its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 4.  Then, on September 21, 2023, the Court of Common Pleas denied Mount Pleasant's motion to reconsider in the BOZA Appeal.[2]  Order Den. Mot. Recons., BOZA Appeal, No. 2021-CP-10-05211.  On

---

[1] Previously on October 14, 2021, the Developers had filed another action in the Charleston County Court of Common Pleas in which they alleged a violation of the South Carolina Freedom of Information Act and sought a declaratory judgment based on the same facts underlying the instant action.  CKC Props., LLC v. Town of Mount Pleasant, No. 2021-CP-10-04761 (Charleston Cnty. Ct. C.P. Oct. 14, 2021).  However, four days after its filing, the parties dismissed the case without prejudice by joint stipulation on October 18, 2022.  See Consent Stipulation Dismissal Without Prejudice, CKC Props., LLC v. Town of Mount Pleasant, No. 2021-CP-10-04761.

[2] The Court of Common Pleas also issued an order denying a motion to reconsider in the DRB Appeal.  Order Denying Mot. Recons., DRB Appeal, 2021-CP-10-04416.  However, the court has since made clear that this was a clerical error, as no motion to reconsider had been filed in that case, and that order was vacated accordingly.  See Order Granting Mot. Relief J., DRB Appeal, 2021-CP-10-04416.  Nevertheless, the DRB Appeal remains pending before the South Carolina Court of Appeals and has since been

4

October 11, 2023, the Developers filed a response in opposition to Mount Pleasant's motion to dismiss or stay the federal case. ECF No. 10.

Two days after the Developers filed their response, Mount Pleasant appealed both the DRB Appeal and the BOZA Appeal to the South Carolina Court of Appeals. See Notice of Appeal, DRB Appeal, No. 2021-CP-10-04416; Notice of Appeal, BOZA Appeal, No. 2021-CP-10-05211. The BOZA Appeal and DRB Appeal have since been consolidated and remain pending before the South Carolina Court of Appeals. See Order Appellants' Mot. Consolidate, Consolidated Appeal, No. 2023-001615. On October 25, 2023, Mount Pleasant replied to the Developers' response in the federal case. ECF No. 14. As such, this motion is fully briefed and is now ripe for review.

## II. STANDARD

"A court has the power to stay proceedings, which is 'incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" Doe v. Bayer Corp., 367 F. Supp. 2d 904, 914 (M.D.N.C. 2005) (quoting Landis v. N. Am. Co., 299 U.S. 248, 254 (1936)). In exercising its authority to grant a discretionary stay, the court "must weigh competing interests and maintain an even balance." Landis, 299 U.S. at 254–55 (internal quotation omitted). Furthermore, "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983). In other words, the proponent of a stay "bears the burden of establishing its

---

consolidated with the BOZA Appeal in that court. See Order Appellants' Mot. Consolidate, Consolidated Appeal, No. 2023-001615.

need." Clinton v. Jones, 520 U.S. 681, 708 (1997) (citing Landis, 299 U.S. at 255). "In deciding whether to grant a motion to stay, courts consider three factors: (1) judicial economy, (2) hardship and equity to the moving party if the action is not stayed, and (3) potential prejudice to the non-moving party." Nationwide Gen. Ins. Co. v. Staples, 626 F. Supp. 3d 899, 906 (E.D. Va. 2022) (quoting Brown v. Energy Servs. Grp. Int'l, Inc., 2022 WL 2161034, at *4 (E.D. Va. June 14, 2022); accord Impulse Monitoring, Inc. v. Aetna Health, Inc., 2014 WL 4748598, at *1 (D.S.C. Sept. 23, 2014) (listing same factors).

### III.   DISCUSSION

Mount Pleasant's primary argument in its motion to dismiss is that S.C. Code Ann. Sections 6-29-820 and 6-29-900 make an appeal to the Court of Common Pleas the exclusive remedy for challenging a decision of either the BOZA or the DRB.[3] See ECF No. 4-1 at 6–7. Consequently, because the Developers actively pursued that remedy when they filed the BOZA Appeal, the federal case must be dismissed. See id. It also offers thirteen other arguments targeted specifically at the Developers' various individual causes of action. See id. at 7–24. Alternatively, Mount Pleasant asserts that this case should be stayed pending resolution of the BOZA Appeal and the DRB Appeal. See id. at 24–28.

In their response, the Developers agree that Section 6-29-820 provides a right to appeal BOZA decisions to the Court of Common Pleas. See ECF No. 10 at 11. They

---

[3] Section 6-29-820(A) provides that: "A person who may have a substantial interest in any decision of the [BOZA] or an officer or agent of the appropriate governing authority may appeal from a decision of the [BOZA] to the circuit court in and for the county." S.C. Code Ann. § 6-29-820(A). Section 6-29-900(A) uses essentially identical language to describe appeals from the DRB. See S.C. Code Ann. § 6-29-900(A).

argue, however, that such an appeal is not the exclusive remedy for challenging a BOZA decision. See id. Instead, they point to S.C. Code Ann. Section 6-29-840(B), which ostensibly states that they may also file a separate lawsuit at any time after the BOZA's decision has been reviewed by the Court of Common Pleas.[4] Id. Thus, they say that because the Court of Common Pleas had—by the time they filed their response—already reviewed the BOZA's decision and had ruled in their favor in the MIE Order, the statute permitted them to proceed with this lawsuit. Id. Additionally, the Developers point to the United States Supreme Court's decision in Knick v. Township of Scott, 139 S. Ct. 2162, 2179 (2019), in which the Court ruled that property owners were no longer required to exhaust state court remedies before asserting takings claims in federal court. ECF No. 10 at 11–12. The Developers argue that either dismissing or staying this case would run afoul of both S.C. Code Ann. Section 6-29-840(B) and the Supreme Court's decision in Knick.[5] Id.

---

[4] Section 6-29-840 reads as follows:

(A) At the next term of the circuit court or in chambers, upon ten days' notice to the parties, the presiding judge of the circuit court of the county must proceed to hear and pass upon the appeal on the certified record of the [BOZA] proceedings . . . .

(B) . . . Nothing in this subsection prohibits a property owner from subsequently electing to assert a pre-existing right to trial by jury of any issue beyond the subject matter jurisdiction of the [BOZA], such as, but not limited to, a determination of the amount of damages due for an unconstitutional taking.

S.C. Code Ann. § 6-29-840; see also S.C. Code Ann. § 6-29-930 (identical language concerning DRB appeals).
[5] In addition to these arguments, the Developers also respond to Mount Pleasant's thirteen additional arguments on dismissal. Id. at 12–32.

In reply, Mount Pleasant argues for the first time that, because the BOZA Appeal and DRB Appeal are now pending in the South Carolina Court of Appeals, this court's case must be dismissed because it is unripe and this court, therefore, lacks subject matter jurisdiction. ECF No. 14 at 1–3 (citing Ballantyne Vill. Parking, LLC v. City of Charlotte, 818 F. App'x 198 (4th Cir. 2020)). Mount Pleasant also reasserts, in the alternative, that this court should stay this case pending the outcome of the BOZA Appeal and the DRB Appeal in the South Carolina Court of Appeals. Id. at 13–15.

To begin, the court notes the jurisdictional questions Mount Pleasant raises in its reply brief.[6] ECF No. 14 at 1–3. Usually, "a federal court . . . may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430–31 (2007). However, "jurisdiction is vital only if the court proposes to issue a judgment on the merits." Id. at 431 (alteration omitted) (quoting Intec USA, LLC v. Engle, 467 F.3d 1038, 1041 (7th Cir. 2006)); see also Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 585 (1999) ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits."). Thus, "[t]he court need not establish that it has subject matter jurisdiction before granting a motion to stay." Michelin Ret. Plan v. Dilworth Paxson, LLP, 2017 WL 2531845, at *4 (D.S.C. June 12, 2017); accord Wood v. Johnson &

---

[6] The court also notes that it normally does not consider arguments raised for the first time in a reply brief, see United States v. Williams, 445 F.3d 724, 736 n.6 (4th Cir. 2006), but recognizes that there is often an exception to this rule when the argument is jurisdictional, see Williams v. Morgan State Univ., 2019 WL 4752778, at *4 (D. Md. Sept. 30, 2019), vacated and remanded on other grounds, 850 F. App'x 172 (4th Cir. 2021).

8

Johnson, 2012 WL 3240934, at *2 (D. Md. Aug. 3, 2012) ("This Court may decide the motion to stay—a procedural issue—despite jurisdictional objections.") (citing In re Ivy, 901 F.2d 7, 9 (2d Cir. 1990)).  Because the court ultimately determines that it is necessary to stay this case, it declines to reach the pending jurisdictional question at this time.  See Michelin Ret. Plan, 2017 WL 2531845, at *4.

Consequently, the court proceeds with considering the factors governing whether to stay this case: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party if it is stayed."  See Impulse Monitoring, 2014 WL 4748598, at *1 (quoting Johnson v. DePuy Orthopaedics, Inc., 2012 WL 4538642, at *2 (D.S.C. Oct. 1, 2012).  The court considers the factors in turn.

**A.  Judicial Economy**

The first factor for the court to consider in deciding whether to grant a stay is the interest of judicial economy.  Impulse Monitoring, 2014 WL 4748598, at *1.  Under this prong, the relevant question is whether staying this case until the South Carolina Court of Appeals resolves the Consolidated Appeal would streamline or moot any issues at stake in this action.  See Rice v. Astrue, 2010 WL 3607474, at *2 (D.S.C. Sept. 9, 2010); cf. Mears Grp., Inc. v. Kiawah Island Util., Inc., 2019 WL 5395963, at *7 (D.S.C. Oct. 22, 2019) (denying motion to stay when resolution of a pending related action "would not streamline the issues or moot any issues in the Mears action").  Moreover, federal courts often use their discretion to delay resolution of cases to give courts in other jurisdictions the chance to decide related cases—especially when those related cases present questions of state law and are pending in state courts.  See Landis, 299 U.S. at 254–56 (affirming

9

federal district court's decision to stay proceedings in one case pending resolution of related proceedings in another district); Rice, 2010 WL 3607474, at *2 ("A trial court has broad discretion to stay proceedings in an action pending the resolution of independent proceedings elsewhere."); Valencia v. Doe Officers, 2014 WL 3687422, at *1, 6 (D.S.C. July 23, 2014) (staying federal § 1983 false arrest claim when a pending criminal case in state court would soon decide whether the plaintiff's arrest was legal and thus might preclude the plaintiff "from asserting the arrest was illegal in [the] § 1983 action"); Jennings v. Preslar, 2021 WL 149008, at *2 (E.D.N.C. Jan. 15, 2021) (staying federal case until the North Carolina state court issued a decision on whether a relevant statute violated the North Carolina constitution); see also Auto-Owners Ins. Co. v. Essex Homes Se., Inc., 2014 WL 4748689, at *3 (D.S.C. Sept. 23, 2014) (staying federal declaratory judgment action pending resolution of "'overlapping' matters undoubtedly at issue in [a] related and ongoing state court proceeding"); Empire Distribs. of N.C., Inc. v. Schieffelin & Co., 677 F. Supp. 847, 855 (W.D.N.C.) ("[W]hen a state court proceeding is pending 'there is no problem if the federal court merely postpones decision for a time to await an opinion of the state court." (quoting 17 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4246 (1978 & Supp. 1987)), aff'd 859 F.2d 1200 (4th Cir. 1988); R.R. Comm'n of Tex. v. Pullman Co., 312 U.S. 496, 501–02 (1941) (instructing the district court to stay its determination on federal constitutional issues until after the state court has ruled on pending state law questions that could moot the federal constitutional questions).

Mount Pleasant argues that the interests of judicial economy favor granting the stay. ECF No. 4-1 at 26. It says that the same issue animating the Developers' claims in

this case —"the 'wrongfulness' of BOZA and DRB's decisions"—also animate their claims in the Consolidated Appeal. Id. Therefore, it asserts that this action should be stayed pending a decision by the South Carolina Court of Appeals in that case. See id. In contrast, the Developers argue that this case should not be stayed because the Court of Common Pleas has already issued the MIE Order, in which it reversed the BOZA's interpretation of Mount Pleasant's ordinances and reinstated the zoning administrator's approval of the Project.[7] ECF No. 14 at 33.

Of course, when the Developers made this argument, the MIE Order had not yet been appealed to the South Carolina Court of Appeals, and there was, therefore, no pending dispute in state court. Since then, the MIE Order has been appealed, and the issues presented in the MIE Order are thus pending once again in the Consolidated Appeal. See Notice of Appeal, Consolidated Appeal, No. 2023-001615. Therefore, this court will assess whether staying this case would further the interest of judicial economy by predicting whether the Consolidated Appeal might streamline or moot the issues presented in this case. See Mears Grp., 2019 WL 5395963, at *7.

In the MIE Order, the Master-In-Equity determined that the BOZA erred as a matter of law when it determined the Project did not comply with Mount Pleasant's ordinances. MIE Order 10–16, BOZA Appeal, No. 2021-CP-10-05211. It therefore

---

[7] The Developers argue that a stay should not be granted based on the four-factor test utilized by the Supreme Court in Nken v. Holder, 556 U.S. 418, 426 (2009). ECF No. 10 at 33. This test, however, is the test used to determine whether an order should be stayed pending appeal, see Hilton v. Braunskill, 481 U.S. 770, 776 (1987), and is different from the three-factor typically test used by courts in this district to determine whether to stay a case, see, e.g., Impulse Monitoring, 2014 WL 4748598, at *1. Nevertheless, the tests are similar enough that the Developers' arguments can be easily transposed.

vacated the BOZA's decision and reinstated the zoning administrator's prior determination that the Project complied with Mount Pleasant's ordinances. Id. at 21. This since-vacated decision from the BOZA is the basis, at least in part, for each of the Developers' claims against Mount Pleasant in this case.[8] See Compl. ¶¶ 90–143.

Consequently, the question of whether, or to what extent, the BOZA's decision was an erroneous invasion of the Developers' property rights is key to this court's resolution of the claims asserted in this case. See id. ¶¶ 91, 98, 110, 128, 131–39, 142–43; see also Pakdel v. City & Cnty. of S.F., 141 S. Ct. 2226, 2230 (2021) ("[B]ecause a plaintiff who asserts a regulatory taking must prove that the government regulation has gone too far, the court must first kno[w] how far the regulation goes." (internal quotation marks omitted) (quoting MacDonald, Sommer & Frates v. Yolo Cnty., 477 U.S. 340, 348 (1986)); Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 539 (2005) ("[E]ach of [the

---

[8] Specifically, the Developers' civil conspiracy claim is premised on the allegation that "the BOZA's decision to reverse the Zoning Administrator's approval of the Project [is] the product[] of one or more conspiracies between two or more persons acting in concert with one another." Compl. ¶ 91. Their negligence claim is based on the assertion that Mount Pleasant has a duty to "[f]aithfully interpret and apply [its] Zoning Code without engaging in any . . . improper influences" and to "[p]roperly train [its] staff . . . [and BOZA] members to understand and be able to correctly interpret and apply Town ordinances." Id. ¶ 98. The Developers support their regulatory taking claim by stating they suffered an adverse economic impact stemming from "BOZA's decision to reverse the Zoning Administrator's approval of the Project." Id. ¶ 110. They back their substantive due process claim with the allegation that "BOZA's decision to reverse the Zoning Administrator's approval of the Project [was] plagued with unjustified and unlawful conduct aimed at thwarting the Project." Id. ¶ 128. Their FOIA claim hinges on whether the BOZA improperly entered into a closed-door executive session to deliberate on whether the Project complied with municipal ordinances. See id. ¶¶ 131–39. Finally, the Developers seek a declaration pursuant to the South Carolina Declaratory Judgment Act, S.C. Code Ann. § 15-53-30, on how their property rights were affected by state law and municipal ordinances at the time they sought approval for the Project; in other words, it is asking the court to declare whether the BOZA was incorrect when it determined the Project did not comply with municipal ordinances. See Compl. ¶¶ 142–43 (citing Pure Oil Division v. City of Columbia, 173 S.E.2d 140, 142 (S.C. 1970)).

regulatory takings] tests focuses directly upon the severity of the burden that government imposes upon private property rights."); Mazyck v. City of North Charleston, 2023 WL 6795418, at *3 (D.S.C. Oct. 13, 2023) ("Before one can allege that his right to life, liberty, or property has been unconstitutionally invaded, one must, of course, have such a right in the first place."). What's more, that is precisely the question that the South Carolina Court of Appeals must answer in the Consolidated Appeal. See MIE Order, BOZA Appeal, No. 2021-CP-10-05211; Notice of Appeal, Consolidated Appeal, No. 2023-001615. As such, resolution of the Consolidated Appeal likely will streamline or moot the issues presented in this case. See Mears Grp., 2019 WL 5395963, at *7. For this reason, the interests of judicial economy strongly favor staying the case at bar. See id.

### B.  Prejudice to Mount Pleasant if the Stay is Not Granted

Mount Pleasant argues that it will be prejudiced if the stay is not granted for two reasons. First, there is a risk of inconsistent rulings on the propriety of the BOZA's and DRB's decisions between this court and the state courts. ECF No. 4-1 at 26–27. Second, it will be forced to go through duplicative, and perhaps unnecessary, discovery. Id. at 27. The Developers, on the other hand, argue that Mount Pleasant will not be irreparably injured by going forward with this case because incurring legal expenses cannot form the basis of irreparable harm and because Mount Pleasant's legal expenses are being financed by its insurers. ECF No. 14 at 33.

For reasons previously explained, there is a strong possibility that the South Carolina Court of Appeal's decision in the Consolidated Appeal will substantially impact, if not outright decide, many of the issues in this case. If this court were to proceed with

consideration of this case, it is certainly possible that it could reach a result inconsistent from the result eventually reached by the South Carolina Court of Appeals. For example, the Developers have asked this court to deny Mount Pleasant's motion to dismiss their substantive due process claim. ECF No. 14 at 25–28. Part of their argument is that they have sufficiently alleged a "cognizable property interest." Id. In support of this proposition, they cite the MIE Order's finding that the Project was in compliance with Mount Pleasant's ordinances and its reinstatement of the zoning administrator's approval of the Project. Id. at 27–28. If this court were to accept that argument and the South Carolina Court of Appeals were to later overturn the MIE Order, there would be an obvious conflict between those two rulings.

Moreover, contrary to the Developers' assertions otherwise, the potential costly legal fees associated with litigating a potentially duplicative case would cause hardship for Mount Pleasant, and this court has found that such costs weigh in favor of granting a stay in previous cases.[9] See, e.g., Regal W. Corp. v. Neeves, 2022 WL 9467966, at *6 (D.S.C. Oct. 14, 2022); accord Mozingo v. S. Fin. Grp., Inc., 520 F. Supp. 2d 725, 731 (D.S.C. 2007) (deciding whether a party objecting to arbitration has been prejudiced based on "delay, expense, or damage to [that] party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue" (emphasis added) (quoting American Reliable Ins. Co. v. Stillwell, 212 F. Supp. 2d 621 (N.D.W. Va. 2002), aff'd 336 F.3d 311 (4th Cir. 2003))). Consequently, the court

---

[9] To be clear, while the court finds that these costs could be burdensome, the court primarily rests its conclusion on the risk of inconsistent rulings, which would prejudice both parties, as well as the attendant burdens of duplicative discovery.

finds that the prejudice Mount Pleasant would face if the case were not stayed favors granting the stay.

### C. Prejudice to the Developers if the Stay is Granted

Mount Pleasant argues that the two preceding factors in favor of granting the stay outweigh any possible prejudice that the Developers might face if the stay is granted.[10] ECF No. 14 at 14–15. The Developers disagree and assert that staying this case would prejudice them in four distinct ways. ECF No. 10 at 33–34. The court will take each of these arguments in turn.

First, they rely on the Supreme Court's decision in Knick, 139 S. Ct. 2162, and argue that granting a stay would be the functional equivalent of reimposing the state-court exhaustion requirement expressly rejected in that case. ECF No. 10 at 33–34. In Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, the Supreme Court outlined two requirements for a takings claim to be ripe in federal court. 473 U.S. 172 (1985). First, there must be a "final decision" from the government

---

[10] When Mount Pleasant first requested that this case be stayed, it also argued that the Developers could not claim to be prejudiced by a delay that they caused when they appealed the BOZA's and DRB's decisions to the Court of Common Pleas. ECF No. 4-1 at 28. Yet after the Court of Common Pleas issued the MIE Order, it was Mount Pleasant that appealed that decision to the South Carolina Court of Appeals. See Initial Notice of Appeal, Consolidated Appeal, No. 2023-001615. It is therefore Mount Pleasant, not the Developers, who is responsible for the current delay in resolving the pending state court action. See id. Nevertheless, there is no evidence that either side pursued their respective state court remedies as an intentionally dilatory procedural tactic, and this court does not wish to punish any party for exercising its right to relief in the state court system when such relief is sought in good faith. Cf. Regal W. Corp., 2022 WL 9467966, at *6 (explaining that the prejudice against a party opposing a stay was minimized by that party's "lack of diligence in pursuing its claims" in related cases pending in other jurisdictions). Consequently, this court will not rule that the Developers cannot be prejudiced simply because they appealed the BOZA's and DRB's decisions, as they were permitted to do under South Carolina law. See S.C. Code Ann. §§ 6-29-840; 6-29-930.

agency charged with implementing land-use decisions under state law. Id. at 186. Second, the property owner must first exhaust the state court system by seeking just compensation there through an inverse condemnation action before bringing the takings claim in federal court. See id. at 194–96. In Knick, the Court overturned the second prong in the Williamson County test. See Knick, 139 S. Ct. at 2167. The Court explained that "[c]ontrary to Williamson County, a property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying of it." Id. at 2170. Therefore, the Court held that a property owner may bring his case in federal court at that time and "need not await any subsequent state action." Id. at 2175.

Consequently, the Developers argue that granting the stay until after the South Carolina Supreme Court rules on the Consolidated Appeal would effectively force them to litigate their issues in state court before being able to bring their claim in this court and thus revive Williamson County's state-court exhaustion requirement. ECF No. 10 at 33–34. This court is unaware of any cases in which the Fourth Circuit has had occasion to rule on whether the Supreme Court's decision in Knick limits the district court's inherent authority to grant a stay pending resolution of a related state court claim. However, in Gearing v. City of Half Moon Bay, the Ninth Circuit was faced with a very similar argument and ruled that Knick does not limit a district court's ability to abstain from a federal takings claim under the Pullman doctrine because of a related eminent domain action that was pending in state court. 54 F.4th 1144, 1147–50 (9th Cir. 2022).

In reaching its decision, the Ninth Circuit noted that abstention "serve[d] federalism by allowing a state court to decide state-law issues in the first instance." Id. at

16

1148.  It also explained that requiring the state court to rule on the eminent domain action before the federal court ruled on the regulatory takings claim was not the same as requiring a party to exhaust state law remedies because an eminent domain action and a takings action compensate the property owner for different injuries.  Id. at 1149.  Eminent domain actions, on the one hand, compensate property owners for the fair market value of their property when they are forced to sell that property to the government.  Id.  "A regulatory taking action, on the other hand, compensates a property owner for '[t]he economic impact of [a] regulation.'"  Id.  (alteration in original) (quoting Lingle, 544 U.S. at 538).

Analogously, the Consolidated Appeal concerns the question of whether the BOZA correctly interpreted municipal ordinances when it reversed the zoning administrator.  See MIE Order, BOZA Appeal, No. 2021-CP-10-05211; Notice of Appeal, Consolidated Appeal, No. 2023-001615.  If the MIE Order is affirmed and reinstated by the South Carolina Court of Appeals, the Developers could proceed with the Project, but there are no monetary remedies at stake in that action.  See id.  In contrast, the Developers, through their regulatory takings claim in this case, seek compensation for the economic impact that they allegedly suffered as a result of the BOZA's decision to reverse the zoning administrator.  Compl. ¶¶ 107–10.  Thus, the different remedies at stake between the Consolidated Appeal and this case are even more clearly distinct from one another than the different types of monetary remedies sought in Gearing and its related eminent domain action.  Compare MIE Order, BOZA Appeal, No. 2021-CP-10-05211; and Compl. ¶¶ 107–10; with Gearing, 54 F.4th at 1149.

17

Moreover, as previously alluded to, allowing the South Carolina Court of Appeals to first determine whether the BOZA's decision violated the Developers' vested property rights will inform this court's decision on whether, or to what extent, the Developers suffered an economic impact as a result of that decision.  See Pakdel, 141 S. Ct. at 2230; Lingle, 544 U.S. at 539; cf. Kingsley Mgmt. Corp. v. City of Santa Ana, 2023 WL 5950599, at *2 (9th Cir. Sept. 13, 2023) (finding Pullman abstention not appropriate when pending state court proceeding "would not meaningfully narrow" takings claim asserted in federal court).  Thus, much like in Gearing, the interests of federalism dictate allowing the South Carolina Court of Appeals to answer that question of state law before this court rules on the takings issue in this case.  See Gearing, 54 F.4th at 1148; see also AOAO Maalaea Yacht Marina v. Dep't of Plan., 2023 WL 4305183, at*13 (D. Haw. June 30, 2023) (staying federal takings claim pursuant to Pullman when state court proceeding will determine whether the plaintiff had a pre-existing right under the applicable ordinance, an unsettled issue under state law).  As such, this court finds that staying this case would not be the equivalent of reviving the Williamson County state court exhaustion requirement, and Knick does not limit this court's ability to stay this case. See Gearing, 54 F.4th at 1147–50; see also Ballantyne Vill. Parking, LLC, 818 F. App'x at 203–04 (finding that a case was not ripe under the first prong of the Williamson County test when a zoning decision was on appeal to the municipal zoning board of appeals and might be appealed thereafter to the state court system).

Second, the Developers argue that a stay would conflict with their ability to pursue a separate lawsuit over the BOZA's decision, as provided in S.C. Code Ann. Section 6-29-840(B).  ECF No. 10 at 34.  That statue specifically says that pursuing a

18

BOZA appeal does not "prohibit[] a property owner from subsequently electing to assert a pre-existing right to a trial by jury of any issue beyond the subject matter jurisdiction of the [BOZA], such as, but not limited to, a determination of the amount of damages due for an unconstitutional taking." S.C. Code Ann. § 6-29-840(B) (emphasis added).  The Developers argue that the word "subsequently" entitles them to file this lawsuit at any time after the Court of Common Pleas reviews the BOZA's decision.  ECF No. 10 at 11.  Thus, because this lawsuit was filed after the Court of Common Pleas ruled on the BOZA's decision in the MIE Order, the Developers claim that they are entitled to pursue this suit and that South Carolina law provides no basis for granting a stay.  Id.

Even if the Developers are correct in their reading of the statute, it would not limit this court's authority to stay this case.  For one thing, by its plain meaning, the word "subsequently" is not the same as "immediately."  Beyond that, enforcement of the MIE Order has been automatically stayed while it is being considered in the South Carolina Court of Appeals.  See Order Appellants' Mot. Confirm Automatic Stay, Consolidated Appeal, 2023-001615; see also S.C. App. Ct. R. 241(a) ("As a general rule, the service of a notice of appeal in a civil matter acts to automatically stay matters decided in the order, judgment, decree or decision on appeal, and to automatically stay the relief ordered in the appealed order, judgment, or decree or decision.").  Such a stay has the effect of suspending the MIE Order pending appeal.  See S.C. App. Ct. R. 241(c).  Since the MIE Order has been stayed in state court, it hardly makes sense for this court to proceed with this case as if the MIE Order were still in place.  Thus, staying this case does not conflict with S.C. Code Ann. Section 6-29-840(B), and this is not a ground for which the Developers can assert they were prejudiced.

Third, the Developers claim that the South Carolina Court of Appeals' decision is likely to take several years, and fourth, they claim that their damages continue to accrue in the meantime while they are unable to pursue the Project. ECF No. 10 at 34. The court is certainly cognizant of these concerns. See Regal W. Corp., 2022 WL 9467966, at *6. "Courts have found that a delay of a few months is significant and contributes to prejudice suffered by the non-moving party." Id. However, any prejudice that the Developers might face as a result of this delay is outweighed by the interests of judicial economy and the prejudice Mount Pleasant might face if the stay is not granted. See id. (granting stay because of pending related cases in other jurisdictions despite possible prejudice to the party opposing the stay).

## IV.   CONCLUSION

For the foregoing reasons, the court **STAYS** this case pending resolution of the Consolidated Appeal, No. 2021-001615, or any potential further appeals therefrom.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**January 3, 2024
Charleston, South Carolina**